Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| OFICINA DE ÉTICA GUBERNAMENTAL

Recurrida

v.

SURIMA QUIÑONES SUÁREZ

Recurrente | KLRA202300424 | Revisión procedente de la Oficina de Ética Gubernamental

Caso Núm.: 22-41

Sobre: Violación al Inciso (d) del Art. 4.3 de la Ley Núm. 1-2012, según enmendada, Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico |
|---|---|---|

Panel integrado por su presidente, el juez Rodríguez Casillas, el juez Salgado Schwarz y el juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 21 de diciembre de 2023.

Comparece la *Sra. Surima Quiñones Suárez* (señora Quiñones Suárez o recurrente) para que revisemos la *Resolución* emitida el 12 de julio de 2023,[1] por la *Oficina de Ética Gubernamental* (OEG o recurrida), en la que el Director Ejecutivo, *Luis A. Pérez Vargas* (Director Ejecutivo), le impuso una multa de $5,000.00 por violar el inciso (d) del Artículo 4.3 de la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico.*[2]

Luego de evaluar los escritos de las partes, los documentos que los acompañan y el derecho aplicable, **revocamos** la *Resolución* recurrida. **Veamos.**

-I-

Surge de los *autos* ante nuestra consideración, que el **10 de diciembre de 2021** la OEG presentó una *Querella* contra la señora

---

[1] Archivada y Notificada el 13 de junio de 2023.
[2] Ley Núm. 1–2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec.1854 *et seq.*

Quiñones Suárez.[3] En la misma, se le imputó haber violado el inciso (d) del Artículo 4.3 de la Ley Núm. 1–2012, según enmendada.[4] En síntesis, alegó que mientras la recurrente trabajó como administradora para la *Administración para el Desarrollo Socioeconómico de la Familia* (ADSEF) contrató —sin la dispensa— los servicios profesionales de la *Sra. Stephanie Nicole Torres Ramos* (señora Torres Ramos), quien es sobrina de la *Sra. Estefita Ramos Guzmán* (señora Ramos Guzmán), que a su vez, era la Directora asociada en Desarrollo de la Familia en la región de Ponce.

El **28 de diciembre de 2021**, la señora Quiñones Suárez sometió su contestación.[5] Arguyó que la *Querella* omite circunstancias importantes del proceso de contratación. Entre otras circunstancias, señaló, que habían varias incongruencias con las fechas. De igual forma, indicó que había un desconocimiento sobre el proceso de contratación de ADSEF. Específicamente, manifestó que la contratación —antes de ser aprobada y firmada por su persona— era evaluada por cuatro (4) áreas administrativas que emitían su recomendación; entiéndanse, Área Pragmática, División de Finanzas, División de Presupuesto y División de Recursos Humanos.[6] En cuanto al parentesco de la señora Torres Ramos con la señora Ramos Guzmán, la recurrente expresó que desconocía el mismo y no le fue informado por los entes encargados de dicha evaluación; en particular, reiteró la ausencia de información sobre el referido vínculo. En ese sentido, indicó, que tan pronto como advino en conocimiento de la posibilidad de parentesco, solicitó la investigación correspondiente y refirió el asunto a la OEG.

---

[3] Anejo 1 de la Recurrente, págs. 1 – 4.
[4] Ley Núm. 1–2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec.1854 *et seq.*
[5] Anejo 2 de la Recurrente, págs. 1 – 4.
[6] Anejo 5 de la Recurrente, págs. 68, 73.

El **12 de mayo de 2022**, la OEG presentó una *Solicitud de Resolución Sumaria.*[7] Planteó diez (10) hechos esenciales sobre los cuales no había controversia. Para sustentar los mismos, sometió varios documentos, entre ellos: la Contestación a un Interrogatorio,[8] el Contrato de la señora Torres Ramos con fecha del 6 de noviembre de 2019,[9] Certificación de la señora Ramos Guzmán emitida por el Administrador Auxiliar de la Oficina de Recursos Humanos,[10] Certificación de Empleo de la señora Ramos Guzmán,[11] y varios Certificados de Nacimientos.[12]

También, adujo que la recurrente —como Administradora de ADSEF— era la autoridad nominadora de la referida agencia para otorgar contratos de servicios. Reiteró, que —ante los certificados de nacimiento— quedaba evidenciado el parentesco de la señora Ramos Guzmán como tía de la señora Torres Ramos, por lo cual, indicó que una mínima diligencia hubiese permitido su conocimiento. Señaló, que la responsabilidad de cumplir con lo dispuesto en el Artículo 4.3 (d) de la Ley Núm. 1–2012, *supra,* recae en la persona que ostenta el cargo público con la facultad de otorgar los contratos en la agencia. Añadió, que el haber delegado en otros funcionarios de la ADSEF no le exime de responsabilidad ante su incumplimiento.

Oportunamente, la recurrente se opuso a que sin la celebración de una vista se le impusiera responsabilidad por la alegada violación al Artículo 4.3 (d) de la Ley Núm. 1–2012, *supra.* Además, alegó que no intervino, ni directa, ni a través de terceros en la contratación de la señora Torres Ramos. Añadió, que el Sr. Rubén Rodríguez Ortiz, Ayudante Especial II de ADSEF, el 17 de

---

[7] Anejo 4 de la Recurrente, págs. 18 – 65.
[8] *Id.*, en las págs. 32 – 37.
[9] *Id.*, en las págs. 38 – 49.
[10] *Id.*, en las págs. 50 – 53.
[11] *Id.*, en la pág. 54.
[12] *Id.*, en las págs. 57 – 60.

enero de 2020 emitió una *Certificación*, en la cual indicó el proceso de contratación seguido para la señora Torres Ramos, sin ninguna intervención por parte de la recurrente y siguiendo las leyes y reglamentos.[13]

Además, reiteró que —antes de efectuar la contratación— el contrato fue evaluado por cuatro (4) componentes sin ninguna objeción. En específico, señaló que la Directora de la División Legal de la ADSEF, la Sra. Zayra Márquez Cabán, certificó el 29 de abril de 2021 que según el expediente:

> *"**No se desprende del expediente de los contratos de Stephanie N. Torres Ramos la información para poder certificar que tiene familiares que laboran en la agencia**.*
> *En el supuesto que tenga familiares, de los contratos otorgados, en la cláusula SIETE, página 6 **se desprende que Stephanie N. Torres Ramos certificó que no tiene relación de parentesco dentro del cuarto grado de consanguinidad ni del segundo por afinidad, con ninguna persona servidora pública que tenga facultad para influenciar y participar en las decisiones institucionales de la PRIMERA PARTE**".[14]*

Igualmente, la recurrente argumentó, que advino en conocimiento del parentesco en una reunión celebrada en Ponce,[15] y que inmediatamente tomó acción para que el asunto se investigara.[16] También, adujo que a la señora Torres Ramos se le han otorgado otros contratos sin la obtención de la dispensa requerida.[17] Sostuvo, que para imputarle la violación al Artículo 4.3 (d) de la Ley Núm. 1–2012, *supra*, deben probarse cada uno de los

---

[13] El *Sr. Rubén Rodríguez Ortiz* indicó:
  *Al área de contratos llegaron sobre 30 resumes para la evaluación de candidatos a contratación por servicios profesionales en la región de Ponce, de los cuales solo serían contratados (servicios profesionales) dieciocho (18). En ningún momento se recibió ninguna intervención para la contratación de personal. Se tomó en consideración los estudios completados, las destrezas y/o habilidades de cada persona, entre otras. Las dieciocho (18) personas contratadas fueron las primeras que completaron los requisitos y entregaron todos los documentos, según requeridos en el Reglamento para la Otorgación de Contratos Núm. 5449 del Departamento de la Familia, aprobado el 19 de junio de 1996 y cartas circulares del Departamento de Hacienda aplicables a los contratos de servicios profesionales y consultivos. Véase*, Anejo 4 de la Recurrente, pág. 56.
[14] Anejo 5 de la Recurrente, pág. 84.
[15] *Véase*, Anejo 5 de la Recurrente, en las págs. 73 – 74, 117 – 119, 120 – 121.
[16] *Id.*, pág. 122.
[17] *Id.*, en las págs. 85 – 98, 99 – 100, 101, 102 – 113.

elementos que configuran dicha disposición, y la intención real a cometer dicha infracción.

Por su parte, la OEG replicó la oposición de la recurrente.[18] En síntesis, reiteró los planteamientos de su solicitud sumaria. Sometida la solicitud y la oposición, el **29 de julio de 2022** se dio por sometido el asunto.[19]

Luego de varios trámites procesales, el **2 de junio de 2023**, el Oficial Examinador (OE) emitió su informe.[20] En el cual, emitió las siguientes *Determinaciones de Hechos*:

> ***1.*** *La Sra. Estefita Ramos Guzmán, labora en la ADSEF desde el 27 de junio de 1974 hasta el presente. Actualmente ocupa el puesto de directora asociada en desarrollo de la familia en la región de Ponce. [Hechos estipulados por las partes, acápite II, inciso A, sub inicios 5 y 6 del Informe de conferencia con antelación a la audiencia; anejos 4 y 5 de la Solicitud de resolución sumaria de la parte querellante.]*
>
> ***2.*** *La Sra. Stephanie Nicole Torres Ramos es sobrina de la Sra. Estefita Ramos Guzmán. [Anejos 5, 6, 7, 8, 9 y 10 de la Solicitud de resolución sumaria de la parte querellante; anejo 3 de la Oposición a solicitud de resolución sumaria de la parte querellada.]*
>
> ***3.*** *La señora Quiñones Suárez se desempeñó como administradora de ADSEF desde el 13 de enero de 2019 hasta el 11 de enero de 2020. [Hecho estipulado por las partes, acápite II, inciso A, sub inciso I del Informe de conferencia con antelación a la audiencia.]*
>
> ***4.*** *Mientras la querellada fungió como administradora de ADSEF fue una servidora pública conforme lo define el articulo 1.2 (gg) de la LOOEG. [Refiérase al párrafo 5 de la Contestación a querella; hecho estipulado por las partes, acápite II, inciso A, sub inciso 2 del Informe de conferencia con antelación a la audiencia.]*
>
> ***5.*** *Como administradora, la querellada era la autoridad nominadora en ADSEF. [Hecho estipulado por las partes, acápite II, inciso A, sub inciso 3 del Informe de conferencia con antelación a la audiencia.]*
>
> ***6.*** *Como administradora de ADSEF, la señora Quiñones Suárez tenía facultad para suscribir contratos de servicios profesionales. [Véase el párrafo 6 de la Contestación a Querella; hecho estipulado por las partes, acápite II, inciso A, sub inciso 4 del Informe de conferencia con antelación a la audiencia.]*
>
> ***7.*** *La querellada no solicitó ni obtuvo autorización por parte de la OEG para contratar a la señora Torres Ramos, sobrina de la Sra. Estefita Ramos Guzmán. [Anejo 2 de la Solicitud de resolución sumaria de la parte querellante.]*

---

[18] Apéndice I de la OEG, págs. 1 – 4.
[19] Notificada el 1 de agosto de 2022.; *Véase*, Anejo 7 de la Recurrente, pág. 160.
[20] Anejo 13 de la Recurrente, págs. 176 – 195.

**8.** *El 6 de noviembre de 2019, la querellada, en representación de la ADSEF, y la señora Torres Ramos otorgaron el contrato de servicios profesionales Núm. 2020-000160. [Hecho estipulado por las partes, acápite II, inciso A, sub inciso 7 del Informe de conferencia con antelación a la audiencia; anejos 2 y 3 de la Solicitud de resolución sumaria de la parte querellante.]*

**9.** *Como parte del mencionado contrato, la ADSEF le pagaba mensualmente a la señora Torres Ramos la cuantía de $1,732.50. [Anejo 3 de la Solicitud de resolución sumaria de la parte querellante, a las páginas 2 y 3 del contrato.]*

**10.** *El 7 de noviembre de 2019, la Sra. Nerita Molina Ríos, administradora auxiliar de Recursos Humanos de la ADSEF, la querellada, y un grupo de empleados de la ADSEF de la oficina regional de Ponce se reunieron para discutir algunas situaciones laborales. Entre los asuntos discutidos los empleados mencionaron que se había contratado a una sobrina de la directora regional de Ponce. [Anejo 10 de la Solicitud de resolución sumaria de la parte querellante; anejo 1 de la Oposición a solicitud de resolución sumaria de la parte querellada.]*

**11.** *Mediante correo electrónico del 8 de noviembre de 2019, la Sra. Nerita Molina Ríos le informó a la OEG que dicha dependencia había contratado los servicios profesionales de una sobrina de la Sra. Estefita Ramos Guzmán. [Anejo 10 de la Solicitud de resolución sumaria de la parte querellante.]*

**12.** *Mediante carta del 9 de diciembre de 2019, dirigida a la señora Quiñones Suárez, con copia al Hon. Luis Pérez Vargas, director ejecutivo de la OEG, entre otras personas, un grupo de empleados de la región de Ponce de la ADSEF resumieron los asuntos que le habían presentado a la querellada en la reunión del 7 de noviembre de 2019. Entre los puntos mencionados, los empleados de la ADSEF incluyeron "[...] la contratación de familiares de directores de la agencia." [Anejo 11 de la Oposición a solicitud de resolución sumaria de la parte querellada.]*

**13.** *Mediante comunicación del 20 de agosto de 2020, el Lcdo. Aniano Torres Rivera, subdirector ejecutivo de la OEG, cursó comunicación a la Sra. Nerita Molina Ríos en la que le indicó, entre otras cosas, que referiría el asunto que aquí nos ocupa al Área de Investigaciones y Procesamiento Administrativo (AIPA) de la OEG. [Anejo 11 de la Solicitud de resolución sumaria de la parte querellante.]*

**14.** *El 2 de noviembre de 2020, el asunto fue referido al AIPA de la OEG. [Anejo 12 de la Solicitud de resolución sumaria de la parte querellante.]*

**15.** *El 10 de diciembre de 2021, la parte querellante presentó la Querella que comenzó el presente caso.*

**16.** *El 10 de diciembre de 2021, la OEG radicó una Querella contra el Sr. Alberto E. Fradera Vázquez. En la misma, se adujo que el señor Fradera Vázquez, como administrador de la ADSEF, contrató en 4 ocasiones los servicios profesionales de la señora Torres Ramos, sobrina de la Sra. Estefita Ramos Guzmán, quien a su vez es directora asociada en desarrollo de la familia de la región de Ponce de la mencionada administración gubernamental. Ello, sin haber presentado una solicitud de autorización ante la OEG, conforme dispone*

> *la LOOEG. [Véanse la Querella y la Resolución del caso administrativo <u>OEG v. Alberto E. Fraderas Vázquez</u>, supra, de los cuales se tomó conocimiento oficial mediante Orden notificada el 23 de mayo de 2023, y obra copia en el expediente oficial del presente caso.]*
>
> ***17.*** *Mediante Resolución del 12 de septiembre de 2022, el director ejecutivo de la OEG acogió un Acuerdo de transacción en el caso <u>OEG v. Alberto E. Fradera Vázquez</u>, supra. En dicho acuerdo, el señor Fradera Vázquez aceptó los hechos imputados y su responsabilidad legal, a nivel administrativo. [Id.].* [21]

Además, el OE señaló que para incurrir en violación al inciso (d) del Artículo 4.3 de la Ley Núm. 1–2012, *supra*, el querellante debe demostrar mediante prueba clara, robusta y convincente las siguientes circunstancias: ***(1)*** *que se trate de una autoridad nominadora;* ***(2)*** *que lleve a cabo un contrato;* ***(3)*** *en el que pariente de un servidor público de la agencia tenga o haya tenido, directa o indirectamente, un interés pecuniario; y* ***(4)*** *no se haya obtenido la autorización previa de la Dirección Ejecutiva de la OEG.*[22] Referente al elemento de la intención, indicó que el mismo no es requisito para determinar la violación al inciso (d) del mencionado Artículo 4.3 de la Ley Núm. 1–2012, *supra*.

Basado en el expediente, el OE determinó que quedó probada la violación por parte de la señora Quiñones Suárez al inciso (d) del Artículo 4.3 de la Ley Núm. 1–2012, *supra*. Específicamente, expresó:

> *En atención a todo ello, se debe concluir que:* ***(1)*** *la señora Quiñones Suárez, autoridad nominadora de la ADSEF;* ***(2)*** *llevó a cabo el contrato de servicios profesionales núm. 2020-000160;* ***(3)*** *con la señora Torres Ramos, quien es sobrina de la Sra. Estefita Ramos Guzmán, directora asociada en desarrollo de la familia de la región de Ponce de la ADSEF, en, el que la contratista tenía un interés pecuniario de $ l,732.5O mensuales durante la vigencia del contrato; y* ***(4)*** *sin haber solicitado ni obtenido la autorización previa de la OEG para llevar a cabo dicho negocio jurídico. Además, no surge del expediente que al contrato en cuestión le sea de aplicación alguna de las excepciones que permitiría que no fuera necesaria una autorización previa de la Dirección Ejecutiva de la OEG.*[23]

---

[21] Anejo 13 de la Recurrente, págs. 180 – 181.
[22] *Id.*, pág. 188.
[23] *Id.*, a las págs. 194 – 195.

Ante tal aplicación, el OE recomendó a la Dirección Ejecutiva que:

> *[e]ncuentre a la querellada incursa en violaciones al inciso (d) del artículo 4.3 de la LOOEG e imponga la multa que considere adecuada conforme a la discreción que le otorga el inciso (c) del artículo 4.7 de nuestra Ley Orgánica.[24]*

Mediante *Resolución* del **12 de julio de 2023**,[25] la OEG acogió el *Informe del Oficial Examinador*,[26] y concluyó que la señora Quiñones Suarez incurrió en una violación al inciso (d) del Artículo 4.3 de la Ley Núm. 1–2012, *supra.* En síntesis, razonó que la aludida disposición, le imponía a la recurrente la obligación directa de no otorgar contratos a parientes de servidores público de la ADSEF sin la debida dispensa de la OEG. En ese sentido, la recurrente debía cerciorarse que la señora Torres Ramos y la señora Ramos Guzmán no eran parientes. Por lo cual, **la OEG le impuso a la señora Quiñones Suárez una multa administrativa de $5,000.00** por violar el referido articulado.

Inconforme con la determinación, la *Sra. Surima Quiñones Suárez* recurrió ante este foro apelativo el **14 de agosto de 2023**. Mediante el presente recurso de revisión, señaló la comisión de dos (2) errores:

> *Incidió la Oficina de Ética Gubernamental al emitir Resolución Sumaria en el caso, a pesar de que existe controversia sobre hechos materiales y como cuestión de derecho no procedía el remedio sumario.*
>
> *La decisión de la Oficina de Ética Gubernamental está fundada en la aplicación del automatismo adjudicativo y las determinaciones en que se basa son carentes de una base racional ya que del récord administrativo surge que la recurrente no conocía personalmente a la contratista ni a la empleada de ADSEF, no conocía que existiera una relación de parentesco, el contrato fue firmado luego de que diversos departamentos de la agencia lo hubieran evaluado y se certificara que no existía impedimento alguno para que fuera otorgado, no existe prueba alguna a los efectos de que la recurrente procuró o intervino directa o indirectamente para que el contrato se otorgara y tan pronto advino en conocimiento de la situación ordenó una investigación y que no se realizaran pagos a la contratista.*

---

[24] *Id.,* pág. 195.

[25] Archivada y Notificada el 13 de junio de 2023.

[26] Anejo 13 de la Recurrente, en las págs. 172 – 174.

El **12 de septiembre de 2023**, la Oficina de Ética Gubernamental sometió *ALEGATO EN OPOSICIÓN A RECURSO DE REVISIÓN JUDICIAL.* Habiendo comparecido ambas partes, estamos en posición para resolver el asunto.

**-II-**

**-A-**

Sabido es que las determinaciones administrativas están revestidas de una presunción de corrección y regularidad.[27] Es norma reiterada que los tribunales debemos dar gran peso o deferencia a las aplicaciones e interpretaciones de las agencias con respecto a las leyes y los reglamentos que administran, por lo que no podemos descartar libremente sus conclusiones e interpretaciones de derecho.[28]

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia.[29] La revisión judicial de dictámenes administrativos debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituya un abuso de discreción.[30]

Utilizando el criterio de razonabilidad y deferencia, los tribunales no debemos intervenir o alterar las determinaciones de hechos de un organismo administrativo, *"si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad".*[31] En ese sentido, la evidencia sustancial es aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una

---

[27] *Gutiérrez Vázquez v. Hernández y Otros,* 172 DPR 232, 244 (2007); *Hernández v. Centro Unido,* 168 DPR 592, 615 (2006).
[28] *Cruz Negrón v. Adm. de Corrección,* 164 DPR 341, 357 (2005).
[29] *Otero v. Toyota,* 163 DPR 716, 727 (2005).
[30] *Comisionado de Seguros PR v. Integrand,* 173 DPR 900, 914-915 (2008); *Murphy Bernabe v. Tribunal Superior,* 103 DPR 692, 699 (1975).
[31] *Otero v. Toyota, supra, págs. 727-728.*

conclusión.[32] Más aún, de existir prueba conflictiva los tribunales debemos considerar como concluyente la determinación de hecho de la agencia y respetar la determinación de credibilidad realizada por la agencia.[33]

Debido a que las determinaciones del foro administrativo tienen que basarse en evidencia sustancial, la parte que las impugne tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia —para formular tales determinaciones— no es sustancial.[34] Es decir, la presunción de regularidad y corrección debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas.[35]

Las conclusiones de derecho, tal y como surge de la *Ley de Procedimiento Administrativo Uniforme*,[36] pueden ser revisadas en todos sus aspectos. Sin embargo, esta revisión total no implica que los tribunales revisores tengamos la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia.[37]

En fin, debemos hacer una evaluación —a la luz de la totalidad del expediente— por lo que de ese modo, podríamos sustituir el criterio de la agencia por el propio, solo, cuando no pueda hallar una base racional para explicar la decisión administrativa.[38]

**-B-**

Por otro lado, la controversia ante nos gira entorno al Artículo 4.3 de la *Ley Orgánica de la Oficina de Ética Gubernamental de*

---

[32] *Gutiérrez Vázquez v. Hernández y otros, supra, pág. 244; Hernández v. Centro Unido, supra, pág. 615; Otero v. Toyota, supra, pág. 728.*

[33] *Gutiérrez Vázquez v. Hernández y otros, supra, pág. 245; Padín Medina v. Administración de los Sistemas de Retiro,* 171 DPR 950, 961 (2007).

[34] *Otero v. Toyota, supra, pág. 728.*

[35] *Calderón Otero v. Corporación del Fondo del Seguro del Estado, 181 DPR 386, 395 – 396 (2011); Otero v. Toyota, supra, pág. 728.*

[36] Ley Núm. 38 del 30 de junio de 2017, según enmendada conocida como la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, 3 LPRA sec. 9601 *et seq.*

[37] *Otero v. Toyota, supra*, pág. 729.

[38] *Id.*

*Puerto Rico*, específicamente el inciso (d),[39] dispone:

> **(d)** *La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. [...].[40]*

La referida disposición enuncia unas instancias en las cuales no aplica el precepto:

> *[E]sta prohibición no aplica cuando, a discreción de la Dirección Ejecutiva, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora contrate con el servidor público o con un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último.*
> *Tampoco aplica al recibo de los beneficios del programa de Sección 8 a los contratos otorgados con el Departamento de Hacienda para operar terminales de lotería electrónica; a los contratos celebrados para la adquisición de derechos sobre la propiedad literaria o la artística, o sobre las patentes de invención; a las subastas públicas en las que concurran todos los requisitos establecidos por ley; a la participación en los programas de verano ni al recibo de servicios, préstamos, garantías o incentivos otorgados bajo los criterios de un programa estatal, federal o municipal. Todo ello siempre que, bajo las anteriores excepciones, se cumpla con las normas de elegibilidad de aplicación general.[41]*

Por su parte, el *Departamento de la Familia* a través del Reglamento 5449 conocido como el *Reglamento para el otorgamiento de contratos del Departamento de la Familia* establece las normas generales que deben regir al momento de otorgar un contrato.[42]

En lo pertinente, dicho reglamento establece que los contratos de servicios profesionales deberán *"estar acompañados por una certificación legal firmada por un abogado licenciado indicativa de que dicho contrato se revisó en todas sus partes y que no hay objeción legal al otorgamiento y firma del mismo"*.[43]

**-C-**

Por otro lado, la sección 3.7 de la Ley Núm. 38–2017, *supra*,

---

[39] Ley Núm. 1 de 3 de enero de 2012, según enmendada, conocida como la *Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico*, 3 LPRA sec. 1857b inciso (d).
[40] *Id.*
[41] *Id.*
[42] *Reglamento para el otorgamiento de contratos del Departamento de la Familia*, Reglamento Núm. 5449, 19 de junio de 1996 (Radicado en el Depto. de Estado el 2 de julio de 1996).
[43] Artículo, IX, inciso 10 del Reglamento 5449, a la pág. 17.

establece que cuando la agencia determine que no es necesario celebrar una vista adjudicativa, se podrá emitir resoluciones sumarias, ya sean de carácter final o parcial:[44]

> *(b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden o resolución sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias [...].[45]*

No obstante, en aquellos casos donde la ley orgánica de la agencia disponga lo contrario no se podrá emitir resoluciones sumarias.[46] De igual forma, no se podrá emitir resoluciones sumarias en aquellos casos que: *"(1) existen hechos materiales o esenciales controvertidos; (2) hay alegaciones afirmativas en la querella que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derechos no procede"*.[47]

Del mismo modo, la OEG mediante su Reglamento Núm. 8231 sobre *Asuntos Pragmáticos de la Oficina de Ética Gubernamental de Puerto Rico* establece lo referente a las resoluciones sumarias.[48] Específicamente, el Artículo 6.11 del Reglamento Núm. 8231, *supra*, dispone que cualquier parte puede solicitar la resolución sumaria de las controversias, mediante la presentación de una moción con no menos de veinte (20) días calendario antes de la audiencia.[49] *"La moción establecerá que no existe controversia de hecho esencial que haya que determinar en la audiencia y estará fundada en documentos, sin limitarse a: declaraciones juradas, certificaciones,*

---

[44] 3 LPRA sec. 9647.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Reglamento sobre Asuntos Pragmáticos de la Oficina de Ética Gubernamental de Puerto Rico*, Reglamento Núm. 8231 de la OEG, 17 de julio de 2012.
[49] Art. 6.11 del *Reglamento sobre Asuntos Pragmáticos de la Oficina de Ética Gubernamental de Puerto Rico, supra*, a las págs. 85 – 86.

*grabaciones, videos o fotografías".*[50] La parte que se oponga a la resolución sumaria, deberá establecer que existe controversia real sobre algún hecho esencial o que el mecanismo sumario es inapropiado.[51]

**-III-**

En síntesis, la señora Quiñones Suárez nos señala que la OEG erró al resolver sumariamente el caso, ya que existe controversia de hechos e incidió al aplicar el derecho.

Al examinar la totalidad del presente caso, es forzoso concluir que la OEG **erró** al acoger las recomendaciones del OE e imputarle una infracción del Artículo 4.3 (d) de la Ley Núm. 1-2012 a la *Sra. Surima Quiñones Suárez.*

**En primer orden**, del expediente se desprende que no existe controversia de hechos materiales que impidan resolver este caso sumariamente.

**En segundo orden**, y conforme al derecho expuesto, el Artículo 4.3 inciso (d) de la Ley Núm. 1-2012, *supra,* dispone que constituye una violación cuando:

> *La autoridad nominadora no puede llevar a cabo un contrato en el que un servidor público de la agencia o un miembro de la unidad familiar, un pariente, un socio o una persona que comparta la residencia de este último tenga o haya tenido, directa o indirectamente, un interés pecuniario durante los últimos dos (2) años anteriores a su nombramiento. [...].*

Ahora bien, cónsono con el artículo antes dicho, se debe tomar en cuenta el Artículo, IX, inciso 10 del Reglamento 5449 para el otorgamiento de contratos del Departamento de la Familia, que en cuanto a los contratos de servicios profesionales, establece lo siguiente:

> *Todo contrato deberá estar acompañados por una certificación legal firmada por un abogado licenciado indicativa de que dicho contrato se revisó en todas sus partes y que no hay objeción legal al otorgamiento y firma del mismo.*[52]

---

[50] *Id.*
[51] *Id.*
[52] *Id.*, a la pág. 17.

Es decir, el Reglamento 5449 procura que el funcionario público realice un grado de diligencia en el marco de las contrataciones de la agencia que cumpla con este cuadro reglamentario. Veamos.

**En tercer orden**, surge de los *autos* ante nos, que —antes de efectuar la contratación— este contrato fue evaluado por cuatro (4) componentes (Área Pragmática, División de Finanzas, División de Presupuesto y División de Recursos Humanos) sin ninguna objeción.[53]

Además, la Directora de la División Legal de la ADSEF, la Sra. Zayra Márquez Cabán, certificó el 29 de abril de 2021 que según el expediente:

> *"**No se desprende del expediente de los contratos de Stephanie N. Torres Ramos la información para poder certificar que tiene familiares que laboran en la agencia**.*
> *En el supuesto que tenga familiares, de los contratos otorgados, en la cláusula SIETE, página 6 **se desprende que Stephanie N. Torres Ramos certificó que no tiene relación de parentesco dentro del cuarto grado de consanguinidad ni del segundo por afinidad, con ninguna persona servidora pública que tenga facultad para influenciar y participar en las decisiones institucionales de la PRIMERA PARTE"**.[54]*

Todavía más, cónsono con la Certificación emitida el 17 de enero de 2020 por el Sr. Rubén Rodríguez Ortiz, Ayudante Especial II de ADSEF, la contratación de la señora Torres Ramos ocurrió de la siguiente manera:

> *Al área de contratos llegaron sobre 30 resumes para la evaluación de candidatos a contratación por servicios profesionales en la región de Ponce, de los cuales solo serían contratados (servicios profesionales) dieciocho (18). **En ningún momento se recibió ninguna intervención para la contratación de personal. Se tomó en consideración los estudios completados, las destrezas y/o habilidades de cada persona, entre otras. Las dieciocho (18) personas contratadas fueron las primeras que completaron los requisitos y entregaron todos los documentos**, según requeridos en el Reglamento para la Otorgación de Contratos Núm. 5449 del Departamento de la Familia, aprobado el 19 de junio de 1996 y cartas circulares del Departamento de Hacienda aplicables a los contratos de servicios profesionales y consultivos.[55]*

---

[53] Anejo 5 de la Recurrente, pág. 73.
[54] Anejo 5 de la Recurrente, pág. 84.
[55] *Véase*, Anejo 4 de la Recurrente, pág. 56.

Nótese, que conforme a la norma establecida en el Reglamento Núm. 5449, este contrato por servicio profesional contó con una certificación legal que indicó que el mismo fue revisado en todas sus partes y no había objeción legal para su otorgamiento. Dicha certificación legal fue obtenida en el contrato en cuestión, y fue evaluado por varias divisiones de la agencia, antes de que la autoridad nominadora estampara su firma. A ello, se añade que la recurrente no procuró o intervino, directa o indirectamente, para que se otorgara el contrato a la señora Torres Ramos. Además, una vez ésta adquiere conocimiento del parentesco, inició una investigación, solicitó la paralización de pagos a la señora Torres Ramos, y refirió el asunto a la OEG.

A todas luces, el grado de diligencia que la señora Quiñones Suárez desempeñó en este caso, cumple con el cuadro reglamentario antes discutido. Razón por la cual, resulta forzoso concluir que, la Resolución recurrida, **resulta irrazonable y apartada de los documentos que obran en el expediente**.

Ante estos hechos, no podemos concurrir con el razonamiento de la OEG, que le impone a la recurrente una responsabilidad vicaria absoluta, sin tomar en cuenta la totalidad de las circunstancias antes expresada. El derecho no opera en el vacío, pues de lo contrario, seríamos meros autómatas aplicando una norma sin ningún sentido de justicia.

**-IV-**

De conformidad con lo antes expuesto, se **revoca** la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones